RICHARD LEON HERNANDEZ, APPELLANT, *v.* THE CITY OF RENO; COUNTY OF WASHOE; CITY OF SALT LAKE CITY, STATE OF UTAH; COUNTY OF SALT LAKE, STATE OF UTAH, RESPONDENTS.

No. 11920

October 13, 1981                              634 P.2d 668

[Rehearing denied December 7, 1981]

*Nada Novakovich,* Reno, for Appellant.

*Wait, Shamberger, Georgeson, McQuaid & Thompson,* Reno, for Respondent City of Reno.

*Erickson, Thorpe, Swainston & Cobb, Ltd.,* Reno, for Respondent County of Washoe.

*Hibbs & Newton,* and *Frank H. Roberts,* Reno, for Respondent City of Salt Lake.

*Vargas & Bartlett,* and *Frederic R. Starich,* Reno, for Respondent County of Salt Lake.

## OPINION

By the Court, GUNDERSON, C. J.:

This is an appeal from a judgment granting involuntary dismissals in an action based upon an allegedly false arrest and subsequent false imprisonment, and from several other orders entered by the district court. The appellant, Richard Leon Hernandez, brought suit against the City of Reno, County of Washoe, City of Salt Lake City, County of Salt Lake, and unidentified John Does, contending that they jointly and severally had falsely arrested and unjustifiably confined him for some forty-two days.

At the inception of the litigation, the district court granted a motion to quash service of summons as to the County of Salt Lake. At the close of appellant's case-in-chief, the court granted motions for involuntary dismissals proffered by the City of Reno, County of Washoe and City of Salt Lake City. Appellant then unsuccessfully moved to amend his complaint to substitute the State of Utah as a defendant for one of the "John Doe" defendants. An appeal has been taken from each of these adverse rulings.

The record before us indicates that appellant was a passenger in a car stopped by a City of Reno police officer for a possible traffic violation on July 14, 1976. The officer ran warrant checks on the driver of the car and on the appellant. The warrant check on the appellant turned up an NCIC "Want" generated by the Salt Lake City police department for a Richard

Leon Hernandez, sought for burglary, theft, and theft by receiving stolen property in Salt Lake City. The NCIC "Want" was for an individual with the same name, date of birth, sex, race, weight, eye color, and hair color as the appellant.[1]

The Reno police took the appellant into custody despite his claims that he had never been in Utah, and that he had not committed the alleged crimes. On July 15, 1976, the Reno police telexed a complete description of the appellant, including his social security number, to Salt Lake City, along with a request for a decision on his possible extradition. The Salt Lake City authorities immediately informed the Reno police by phone that they would extradite the appellant. On July 23, 1976, the Reno police received a certified warrant of arrest and a certified complaint for one Richard L. Hernandez from the Salt Lake City authorities.

On July 28, 1976, the fifteenth day of his confinement, the appellant was arraigned in justice court and transferred from the Reno City Jail to the Washoe County Jail. Appellant was kept in Washoe County Jail until August 20, 1976, *i.e.* the day on which the Utah authorities assumed custody over him. During appellant's stay in the Washoe County facility, he continued to protest to the authorities that they had the wrong man. The Washoe County authorities formally requested the Salt Lake City police to send a photo of the suspect they were seeking with their NCIC "Want." The Salt Lake City police responded with a "mug shot" of appellant, which they had obtained from the Los Angeles police. A typed note attached to the photo declared that, "research indicates this photo may be of suspect Richard Leon Hernandez." The Salt Lake City police sent this photo and note, even though a member of their department, Detective B. Smith, personally knew the actual suspect in the NCIC "Want," had questioned him extensively, and could identify him.

Confronted with his photo, and told by Washoe County authorities that it was a picture of the suspect wanted in Salt Lake City, Hernandez waived extradition to Utah on August 12, 1976. The Utah authorities took custody of appellant on August 20, 1976. At appellant's arraignment hearing in Salt Lake County Court, at Salt Lake City, Detective B. Smith confronted the appellant for the first time and quickly told the presiding judge: "There has been a great error." The Utah

---

[1]The appellant was one inch taller and had a different social security number than the individual sought in the "Want"; however, it does not appear in the record that this information was transmitted to the arresting Reno officer.

authorities ultimately released appellant on August 24, 1976, gave him a "no complaint notice," and provided air transportation back to Reno.

*The NRCP 41(b) Involuntary Dismissals*

An action may be dismissed at the close of a plaintiff's case "on the ground that upon the facts and the law the plaintiff has failed to prove a sufficient case for the court or jury." NRCP 41(b). In evaluating appeals from involuntary dismissals of actions at the close of a plaintiff's case, "plaintiff's evidence and all inferences that reasonably can be drawn from it must be deemed admitted and the evidence must be interpreted in the light most favorable to plaintiff." Gordon v. Cal-Neva Lodge, Inc., 71 Nev. 336, 337, 291 P.2d 1054 (1955); Schwabacher & Co. v. Zobrist, 97 Nev. 97, 625 P.2d 82 (1981); Bates v. Cottonwood Cove Corp., 84 Nev. 388, 391, 441 P.2d 622 (1968).

As to each respondent, appellant bore the burden of introducing sufficient evidence in his case-in-chief to establish a prima facie case. "To establish false imprisonment of which false arrest is an integral part, it is . . . necessary to prove that the person be restrained of his liberty under the probable imminence of force without any legal cause or justification." Marschall v. City of Carson, 86 Nev. 107, 110, 464 P.2d 494 (1970). As summarized by the American Law Institute, an actor is subject to liability to another for false imprisonment "if (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it." Restatement (Second) of Torts § 35 (1965).

Appellant's case-in-chief, as preserved in the record, did not make a sufficient showing against either the City of Reno or the County of Washoe. Hence, we affirm the district court's order granting an involuntary dismissal to these parties. The Reno police arrested appellant on probable cause, established by the near perfect match between the NCIC "Want" and appellant's name, age, and physical characteristics.

Nor do we believe appellant's subsequent detention in the Reno City Jail was "without any legal cause or justification,"

so far as the City of Reno's conduct was concerned. A person arrested as appellant was, *i.e.* without a warrant for a felony committed out of the state, "must be taken before a judge or magistrate with all practicable speed and complaint must be made against him setting forth the ground for the arrest." *See* NRS 179.205. "Thereafter, his answer shall be heard as if he had been arrested on a warrant." *Id.* Clearly, however, the statute contemplates that the demanding state shall be allowed a time which is reasonable in the circumstances, in which to forward information necessary to allow a complaint to be prepared and supported. Thus, we think it was proper for the district court to decide, as a matter of law, given the circumstances of this case, that the jurors could not reasonably decide that the City of Reno had failed to arraign appellant "with all practicable speed." During the course of appellant's two-week detention, the Salt Lake City authorities gave the City of Reno verbal assurances that appellant Hernandez was their intended suspect, that they would extradite him, and that a certified warrant of arrest and complaint were forthcoming to accomplish this purpose. Similarly, we think the district court correctly concluded that Washoe County's acceptance of appellant's custody, and its continuance of his confinement, was justified by the appropriateness of his initial arrest, and by his arraignment in justice court on the certified complaint and certified warrant of arrest.

To the contrary, considering the evidence in appellant's case-in-chief in the light most favorable to the appellant, we feel compelled to hold that appellant did establish a case against the City of Salt Lake City, sufficient to withstand a motion pursuant to NRCP 41(b). From the record now before us, it may be inferred that the Salt Lake City authorities clearly intended appellant to be confined. Among other things, the record indicates they not only placed the initial NCIC "Want," but telephoned promising to extradite appellant. They prepared and forwarded to Reno a certified warrant of arrest and a complaint. They forwarded photos of the appellant. So far as appears, they did not investigate or attempt to reconcile the difference between the description they had put out through NCIC and the description of the suspect being held for them in Reno.

Without passing judgment on the ultimate quality of the evidence presented, or on the credibility of the appellant's witnesses, but interpreting the record most favorably to appellant, we believe the record warrants inferences sufficient to render

unjustified the judgment of dismissal in favor of Salt Lake City.

### The Denial of Appellant's Motion to Amend

When the involuntary dismissals of respondents City of Reno, County of Washoe and City of Salt Lake City terminated the trial below, appellant moved to amend his complaint to substitute the State of Utah as a defendant for one of the Doe defendants. The district court denied this motion. In our view, this discretionary ruling did not constitute error.

After a responsive pleading is served, a complaint may be amended only by leave of court, although "leave shall be freely given when justice so requires." NRCP 15(a). In regard to amendments seeking to bring in "proper defendants," we have declared:

> There appear to be three factors governing the determination when a "proper defendant" might be brought into an action by amendment even though the statute of limitations might have run. They are that the proper party defendant (1) have actual notice of the institution of the action; (2) knew that it was the proper defendant in the action, and (3) was not in any way misled to its prejudice.

Servatius v. United Resort Hotels, 85 Nev. 371, 373, 455 P.2d 621 (1969); Lunn v. American Maintenance Corp., 96 Nev. 787, 618 P.2d 343 (1980); Echols v. Summa Corp., 95 Nev. 720, 722, 601 P.2d 716 (1979).

In denying the appellant's motion to amend, the district court noted he had "failed to show that the State of Utah had actual notice of the institution of this action." Nothing in the record appears to counter this explicit determination by the district court. Therefore, it does not appear that the district court erred in denying appellant's motion to amend his pleadings to include the State of Utah as a party defendant.

### The Motion to Quash Service of Summons

This court has heretofore held that an order quashing service of process is not appealable. Jarstad v. National Farmers Union, 92 Nev. 380, 384, 552 P.2d 49 (1976). Moreover, from the record, appellant has failed to demonstrate any conceivable prejudice resulting from the absence of the County of Salt Lake as a party to this action.

We, accordingly, reverse the district court's order granting

an involuntary dismissal to the City of Salt Lake City, and we remand this matter for a new trial as to that defendant. We affirm all other orders and judgments of the district court from which this appeal has been taken.

MANOUKIAN, BATJER, SPRINGER, and MOWBRAY, JJ., concur.