JAVIER SOLANO PLAZA AND MONICA N. SOLANO PLAZA, APPELLANTS, v. CITY OF RENO, RESPONDENT.

No. 25857

June 27, 1995
898 P.2d 114

*Osborne and Gamboa* and *Kevin P. Ryan,* Reno, for Appellants.

*Patricia Lynch,* City Attorney, *Dianne E. Foley,* Deputy City Attorney, Reno, for Respondent.

# OPINION

*Per Curiam:*

Appellant Javier Solano Plaza (Plaza) was arrested by Reno police officers pursuant to a warrant for another individual who had used the name Javier Solano as an alias and, coincidentally, had the same birth date as Plaza. Plaza was jailed for five days and four nights before the police realized that he was not the individual described in the warrant. Plaza and his wife filed a complaint against the City of Reno (Reno) for false arrest, false imprisonment, assault, battery and two causes of action for intentional infliction of emotional distress. The district court granted Reno's motion for summary judgment. We hold that there are still genuine issues of material fact, and summary judgment was therefore inappropriate.

On August 17, 1991, Plaza applied for housing assistance with the Reno Housing Authority. Plaza completed the required form, indicating that his name was Javier Solano, that his date of birth was March 17, 1961, that his social security number was 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, and that his driver's license number was 385329071161.

Reno Police Officer Patrick O'Bryan (O'Bryan), working as the liaison officer to the Reno Housing Authority, conducted two background checks on Plaza. The initial check showed that Plaza had no criminal record with the Reno Police Department.

O'Bryan then ran a check in the national crime data base, the N.C.I.C. In running the check, O'Bryan simply entered the name "Solano." The search generated a felony "want hit" from Los Angeles, California for a fugitive named Isidro Gonzales Tremillo (Tremillo). Apparently, Tremillo was also known as Javier Solano or Javier Plaza Solano. Tremillo's date of birth was March 17, 1961, the same as Plaza's birthdate.

Sixteen days after O'Bryan ran the check and found out about the warrant for Tremillo, he ran a second check. O'Bryan confirmed that the previously discovered warrant on Tremillo was still active. However, according to the N.C.I.C., there were no active warrants for the person holding Plaza's social security number, 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. O'Bryan claims that, using Plaza's driver's license number from his housing application, he pulled up Plaza's physical description from the Department of Motor Vehicles records.[1] O'Bryan could not, however, have pulled up Plaza's description using the number on the housing application,

---

[1] The description of Plaza differs from the description of Tremillo only in that Plaza is two inches shorter, five pounds heavier, and has brown hair, as opposed to Tremillo's black hair.

because the number on the application is 385329071161, and Plaza's driver's license number is actually 385229071161. On the basis of the information that he had at the time, O'Bryan and another police officer went to the Plaza's home and entered the house, where Plaza and his wife (who was seven months pregnant) were asleep in bed.

Plaza and his wife awoke to find strangers in their bedroom, pointing guns at them. At the time of the arrest, neither Plaza nor his wife spoke English. Neither of the arresting officers spoke Spanish.

The police pulled Plaza out of bed, handcuffed him, led him out of the bedroom and placed him on the couch in the living room. The police then ordered Plaza's pregnant wife out of bed, although she was wearing only a T-shirt and underwear, and took her to the living room. The officers then searched the apartment. Following the search, the police took Plaza to jail and kept him there for five days and four nights before they discovered their mistake and released him.

Plaza concedes that "all causes of action are contingent upon a finding that defendant's police officers did not have probable cause to arrest Javier Solano Plaza." Reno argues that the officers had probable cause to arrest Plaza pursuant to Hernandez v. City of Reno, 97 Nev. 429, 634 P.2d 668 (1981). In *Hernandez*, this court found probable cause to arrest someone who had the same name, date of birth, sex, race, weight, eye color, and hair color as the fugitive described in an N.C.I.C. "want." If O'Bryan had a physical description of Plaza before he went to make the arrest, he would have had probable cause, because the physical characteristics of Plaza and Tremillo were so similar. However, there is a genuine issue of material fact concerning whether O'Bryan actually had a description of Plaza. O'Bryan claims that he got a description of Plaza from Plaza's driver's license, but he did not have Plaza's correct driver's license number before the arrest. Further, the driver's license record which Reno presented to support their claim that O'Bryan compared the descriptions was generated December 6, 1991. The arrest occurred on September 14, 1991. At O'Bryan's deposition, the following exchange took place:

> Q: Okay, now is it correct that [the DMV printout which Reno presented] was not the correct printout that you received on September 14th?
> A: That's correct, because this has been printed out.
> Q: When was this printout made?
> A: December 6th of 1991.

Q: But did you obtain a printout September 6, 1991, on Javier Plaza-Solano?

A: No. Yes.

O'Bryan's answer indicates that even he may have some doubt about whether he checked the printout. If O'Bryan went to make the arrest based only on their matching birthdates and the similarity between Tremillo's alias and Plaza's name, he lacked probable cause. The question of whether O'Bryan had the description is a genuine issue of material fact, and summary judgment was not proper.

At oral argument, counsel for Reno asserted that O'Bryan had used some alternative method to retrieve Plaza's physical description, *e.g.*, pulling up his driver's license by using his social security number. However, this information is not part of the record, and so it remains an unresolved question of material fact to be answered at the district court. Accordingly, the order of summary judgment is vacated and the case is remanded to the district court for further proceedings.